**SIGNED THIS: September 30, 2009**

_____
**THOMAS L. PERKINS
UNITED STATES CHIEF BANKRUPTCY JUDGE**

_____

**UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| RONALD and ROBIN REDPATH, | ) | No. 09-80972 |
| | ) | |
| Debtors. | ) | |

**O P I N I O N**

This matter is before the Court after evidentiary hearing on the motion of the Debtors, Ronald and Robin (ROBIN) Redpath (together referred to as "DEBTORS"), to redeem a motor vehicle, and the objection filed by Farmers State Bank (FARMERS STATE BANK). The parties dispute the appropriate standard for valuation.

The DEBTORS filed a voluntary Chapter 7 petition on March 30, 2009. On May 6, 2009, they filed a motion to redeem their 2005 F150 Supercrew pickup from the lien held by FARMERS STATE BANK, by paying the sum of $16,000.[1] FARMERS STATE BANK objected, contending that the truck's fair market value exceeded the proposed redemption

---

[1] DEBTORS had also sought to redeem a second vehicle from FARMERS STATE BANK, but that motion was later withdrawn.

price. A hearing was held on July 23, 2009. At the outset, the parties disputed the applicable valuation standard. FARMERS STATE BANK, relying on Section 506(a)(2), contended that retail value is appropriate for redemption purposes. The DEBTORS assert that the proper value is what FARMERS STATE BANK would receive if it liquidated the collateral. The Court requested briefs on the issue.

ROBIN, called by FARMERS STATE BANK, confirmed that the "cash price" of the truck, purchased as a used vehicle on November 15, 2008, was $20,995. In addition, the DEBTORS purchased a 100,000 mile/six year premium warranty for $1,730, which they continue to hold.[2] ROBIN admitted that the truck could be described as a "clean" vehicle, although it has a couple of dings and scratches. She denied that the DEBTORS attributed the value of $23,000 to the truck, as shown in the bankruptcy schedules.

FARMERS STATE BANK presented the testimony of Keith Bloomfield, an experienced car salesman and the owner of a used car business located in the DEBTORS' home town.[3] He described the DEBTORS' truck as a four-wheel drive vehicle equipped with an FX package. As a "supercrew," the truck has four full-size doors and a backseat. Mr. Bloomfield testified that the DEBTORS' truck was in excellent condition and that its value is enhanced by its low mileage. He rendered his opinion that the retail value of the truck is $21,500, given the current favorable market conditions. Although his opinion was based in part on the National Automobile Dealers Association (NADA) guidebook, he

---

[2] In addition, the amount financed by FARMERS STATE BANK included the loan balance of $10,615.36 on the vehicle which the DEBTORS traded in. An allowance of $6,000 was made on the trade.

[3] Mr. Bloomfield testified that he has been a car salesman for thirty-one years. The DEBTORS did not question his expertise.

2

testified that a sale of the truck at retail would bring that amount. According to Mr. Bloomfield, the warranty on the truck, which is transferable by the DEBTORS, increases the value of the truck by $1,000 to $1,500.

The DEBTORS did not present any opinion evidence as to the value of the truck. By way of cross-examination of Mr. Bloomfield, the DEBTORS introduced the values published by the NADA, for a truck of the same age and model. Under the NADA guidelines, prior to considering any add-ons, the average retail value of the truck is $18,100; the average loan value is $13,850; the "rough" trade in value is $12,650; the average trade in is $14,150; and the "clean" trade in is $15,375. On redirect examination, Mr. Bloomfield testified that the applicable add-ons provided by the NADA are $2,500 for low mileage; $225 for power seats for loan value and $250 for retail value; $425 for leather seats for loan value and $475 for retail value.[4] So, with adjustments, the NADA retail value is $21,325.

**ANALYSIS**

Section 722 of the Bankruptcy Code allows a Chapter 7 debtor to redeem secured property from the lien of a creditor "by paying the holder of such lien the amount of the allowed secured claim of such holder that is secured by such lien." 11 U.S.C. § 722. Section 506(a) defines an allowed secured claim as "the value of such creditor's interest in the estate's interest in such property." 11 U.S.C. § 506(a). Section 506(a) provides that the determination of that value is to be made "in light of the purpose of the valuation and of the proposed disposition or use of" the property. *Id.* Historically, the vast majority of

---

[4] The DEBTORS' schedules show that the mileage on the truck at the time of filing was 24,000.

3

courts, including this one, equating a redemption with surrender, which essentially places the debtor in the position of exercising a right of first refusal at a liquidation sale of the collateral, have held that the appropriate valuation standard for redemption was the amount the creditor would receive upon liquidation of the collateral. *See e.g., In re Perez*, 318 B.R 742 (Bankr.M.D.Fla. 2005); *In re Tripplett*, 256 B.R. 594 (Bankr.N.D.Ill. 2000); *In re Henderson*, 235 B.R. 425 (Bankr.C.D.Ill. 1999)(Altenberger, J.); *In re Rodgers*, 273 B.R. 186 (Bankr.C.D.Ill. 2002). Because most creditors dispose of repossessed vehicles at auction, the prevailing standard was that of wholesale value. *See In re Neal*, 314 B.R. 198, 200 (Bankr.N.D. Iowa 2004).

Section 506(a)(2), added by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), pronounces a new rule. That section provides:

> If the debtor is an individual in a case under chapter 7 or 13, such value with respect to personal property securing an allowed claim shall be determined based on the replacement value of such property as of the date of the filing of the petition without deduction for costs of sale or marketing. With respect to property acquired for personal, family, or household purposes, replacement value shall mean the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined.

11 U.S.C. § 506(a)(2).[5] The statute makes it clear that a replacement or retail value applies in Chapter 7 and Chapter 13 cases irrespective of the proposed disposition of the property. *See In re Beaux,* --- B.R. ----, 2009 WL 2511908 (Bankr.W.D.La. 2009). Given that Section 722 only permits a debtor to redeem "tangible personal property intended primarily for

---

[5] It is not clear whether the value should be determined as of the petition date or as of the hearing date. *See Ortiz,* 2007 WL 1176019, at *2 (Bankr.S.D.Fla. 2007). The parties here did not address that issue and the record is unclear whether Mr. Bloomfield's valuation was as of the date of the filing of the bankruptcy or as of the date of the hearing. The Court's determination is based solely on the evidence submitted by the parties.

4

personal, family, or household use," the second sentence of Section 506(a)(2), which narrowly defines replacement value as "the price a retail merchant would charge for property considering the age and condition of the property at the time value is determined," is applicable here. *In re Morales*, 387 B.R. 36 (Bankr.C.D.Cal. 2008); *In re Kidwell*, 2007 WL 2934866 (Bankr.E.D.Tenn. 2007); *In re Ortiz*, 2007 WL 1176019 (Bankr.S.D.Fla. 2007); *In re Brown*, 2006 WL 3692609 (Bankr.D.S.C. 2006).

In their brief, the DEBTORS, relying on *In re Nice*, 355 B.R. 554 (Bankr.N.D.W.Va. 2006), contend that "replacement" value is not equivalent to NADA "retail" value. In *Nice*, the court declined to depart from its pre-BAPCPA practice of employing a presumptive valuation standard for Chapter 13 cramdown purposes of the average between NADA retail and trade-in values. In so ruling, however, the court characterized the presumption as simply a "guidepost," subject to a creditor's request for an evidentiary hearing. The DEBTORS' reliance on *Nice* is misplaced for two reasons. First, the standard to be applied here is not the somewhat undefined "replacement" value of the vehicle, but rather the specific standard of the "price a retail merchant would charge." Second, the evidentiary record includes expert testimony as to the value of the DEBTORS' truck, so bare reliance on the NADA guidelines is not necessary.

The determination of value is essentially a question of fact. *In re Meshberger*, 131 F.2d 287 (7th Cir. 1942). This Court has long adhered to the view that, with one exception, discussed below, the best evidence of a vehicle's value is the testimony of an independent qualified appraiser who bases his opinion on an actual inspection of the mechanical condition and the interior and exterior of the vehicle. When expert opinion evidence is not

5

presented, or is found not to be credible, the Court has considered the NADA guidelines and other reputable sources as appropriate indicators of value. Those guidelines often serve as merely a starting point, where other non-expert evidence, such as a debtor's testimony as to the condition of the vehicle, is admitted.

Mr. Bloomfield testified to his opinion that the retail value of the truck is $21,500, a value slightly greater than the cash price of the vehicle in November, 2008, which was $20,995. Herein lies the exception referred to above. Opinions of value are just that – opinions or estimates of what the property would likely sell for on the open market. An actual arms length sale between a willing buyer under no compulsion to buy and a willing seller under no compulsion to sell ordinarily sets the market price for that particular asset.

Since most vehicles do not appreciate in value, Mr. Bloomfield's opinion is, on its face, inconsistent with the cash price of the truck when it was purchased four months before bankruptcy.[6] This Court finds that the actual sale price established the fair market retail value of the truck at the time of the sale. With minimal depreciation between the time of purchase and the bankruptcy, the Court determines the redemption value to be $20,500.

Mr. Bloomfield also testified that the warranty would add $1,000 to $1,500 in value. The agreement evidencing the warranty is not part of the record, and it is certainly a separate, independent contract in the nature of an insurance agreement for future repairs. It is not "tangible personal property" for purposes of Section 722 and is not subject to redemption under that provision over the objection of the warrantor.

---

[6] Mr. Bloomfield offered no explanation for this inconsistency. Neither did his opinion testimony include a statement that the vehicle actually appreciated in value after the November, 2008, sale.

6

Accordingly, the DEBTORS may redeem the 2005 F150 from the lien of FARMERS STATE BANK for the sum of $20,500, payable in full within thirty days, with the warranty cancelled and terminated. If the DEBTORS desire to have the warranty remain in force, they are free to negotiate a new deal for additional consideration with the warrantor.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###